FILED
SUPERIOR COURT
OF GUAM

2021 DEC 14 PM 4:40

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>         Plaintiff,<br><br>   vs.<br><br>RAIFINI JICKO,<br><br>         Defendant. | Case No.: CF0267-21<br><br>**DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF DEFENDANT'S CONSTITUTIONAL AND CIVIL RIGHTS OR IN THE ALTERNATIVE TO SUPPRESS EVIDENCE** |

### INTRODUCTION

This matter came before the Honorable Alberto E. Tolentino on October 15, 2021 following a motion hearing and submission by Defendant Raifini Jicko ("Defendant") of a Motion to Dismiss or in the Alternative to Suppress Evidence. The People of Guam ("People") are represented by Assistant Attorney General Jeremiah Luther. The Defendant is represented by Assistant Alternate Public Defender Heather Zona. Having considered the parties' arguments and the applicable law, the Court hereby **DENIES** the Defendant's motion.

### BACKGROUND

A grand jury indicted Defendant for Aggravated Assault (As a Second Degree Felony). Indictment, June 18, 2021 at 1–2. The Court arraigned Defendant on July 22, 2021. Minute

Entry, July 2, 2021. Defendant subsequently filed the instant motion, which the People opposed. *See* Def.'s Mot. to Dismiss for a Violation of Def.'s Constitutional and Civil Rights or in the Alternative to Suppress Evidence, Aug. 13, 2021 at 2 (hereinafter "Def.'s Mot. to Dismiss"); *see* People's Opp'n to Def.'s Mot. to Dismiss, Sept. 7, 2021 at 1. On October 15, 2021, the Court held a hearing on the motion and took the parties' arguments under advisement. *See* Minute Entry, Oct. 15, 2021.

## FINDINGS OF FACT

On October 15, 2021, the Court conducted an evidentiary hearing on the motion. Minute Entry, Oct. 15, 2021. Officer Valenzuela was the only witnesses called by the People. Digital Recording at 11:13:33–11:26:58 (Mot. Hr'g, Oct. 15, 2021). Defendant did not call any witnesses. *Id.* From the testimony received from this witness the Court finds:

On May 31, 2021, Guam Police Department ("GPD") Officers Valenzuela, Cruz, Pangelinan, and Santos responded to a reported stabbing at Defendant's family home. Digital Recording at 11:13:33–11:26:58 (Mot. Hr'g, Oct. 15, 2021). When they arrived at the scene, a man exited the residence and informed the Officers that Defendant had stabbed him. *Id.* The man was about fifteen feet away from Defendant. *Id.* Officer Valenzuela approached Defendant, and told him to keep his hands visible. *Id.* Officer Valenzuela accompanied this instruction with a gesture of his hands. *Id.* Defendant and Officer Valenzuela began to discuss the altercation while Officer Cruz assisted the victim. *Id.* Officer Valenzuela asked Defendant if he would be willing to go to the GPD precinct to answer some questions. *Id.* Defendant nodded, indicating he was willing to answer questions at the precinct. *Id.* Officer Valenzuela did not arrest Defendant at this point, but if Defendant had tried to leave Officer Valenzuela would have arrested him. *Id.*

GPD officers transported Defendant to the police precinct by police cruiser, where GPD officers provided Defendant with a Custodial Form in English. *Id.* There was no conversation in the police cruiser, and the Defendant was not handcuffed. *Id.* Defendant never objected to the process of being placed in an interrogation room. *Id.* Officer Valenzuela told Defendant to read the form, and if he understood it, to sign it. *Id.* Officer Valenzuela also instructed Defendant to let him know if he had any questions about the form. *Id.* Defendant placed initials next to each line on the Custodial Form. *Id.* Officer Valenzuela asked Defendant questions about the stabbing, and Defendant explained that he stabbed his cousin following an argument. *Id.* Defendant's cousin told Defendant that he was being too loud and that he was worried Defendant would wake the neighbors. *Id.* That conversation led to an argument. *Id.* Defendant thought that his cousin was going to punch him, so Defendant stabbed him. *Id.* It was following the interrogation that Officer Valenzuela officially arrested and processed Defendant. *Id.* During all of their interactions, Defendant never indicated to Officer Valenzuela that he did not understand anything Officer Valenzuela said or did. *Id.* All interactions with GPD—including interrogation—occurred in English. *Id.* Officer Valenzuela never heard Defendant speak in any language other than English. *Id.* Defendant is a citizen of the Federated States of Micronesia ("FSM") and his native language is Chuukese. *Id.*

## DISCUSSION

### I. Equal Protection

**A. GPD officers did not deny Defendant equal protection of the law by not providing Defendant with an interpreter.**

The Fourteenth Amendment of the Constitution prohibits any state from making or enforcing laws that deny any person equal protection of the laws within its jurisdiction. U.S. Const. amend. XIV, § 1. The Equal Protection Clause protects against "intentional and

arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A corresponding provision in the Organic Act of Guam provides the same protections. 48 U.S.C. § 1421b(u).

Defendant argues GPD's failure to provide an interpreter constitutes a government action that discriminates against Defendant based on his membership of a protected class. Def.'s Mot. to Dismiss at 3–4. Specifically, he argues that GPD noted his personal characteristics as a limited proficiency English speaker and intentionally declined to provide him with an interpreter because of those characteristics. *Id.* Yet, Defendant fails to demonstrate any conduct by GPD that was intentionally discriminatory, or even that GPD was aware that Defendant is a limited proficiency English speaker. Officer Valenzuela testified that he believed Defendant understood everything he told Defendant in English. Digital Recording at 11:13:33–11:26:58. Officer Valenzuela also testified that he would be surprised if he was told that Defendant did not speak English because Defendant spoke English during the interrogation. *Id.* Defendant argues that GPD deprived him of information English speakers receive in similar circumstances. Def.'s Mot. to Dismiss at 5. Defendant received the same *Miranda* form that all accused receive at GPD. *See* Digital Recording at 11:13:33–11:56:46. Officer Valenzuela told Defendant to let him know if he had any questions about the form. *Id.* Therefore, GPD made the same information available to Defendant as is available to all accused.

The Court finds no evidence that GPD intended to discriminate against Defendant, and no evidence that Defendant was a member of a protected class based on his English speaking ability. As discussed in greater detail below, the Court believes that Defendant understood Officer Valenzuela, preventing him from being in a protected class of limited proficiency

English speakers. If he did not understand Officer Valenzuela, Defendant had the opportunity to ask for clarification or an interpreter.

**B. GPD did not violate Defendant's Due Process rights when they did not offer Defendant an interpreter.**

The Due Process Clauses of the Fourteenth and Fifth Amendments prohibit states from depriving a person of life, liberty, or property without due process of law. U.S. Const. V, XIV, § 1. The Organic Act of Guam affords the same protections as the Due Process clauses of the Fourteenth and Fifth Amendments. *See* 48 U.S.C. § 1421b(e), (u). The United States Supreme Court has adopted a three-part test to evaluate due process issues, which considers: "(1) the private interest that will be affected by the official action (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *People v. Garcia-Cepero*, 874 N.Y.S.2d 689, 696 (N.Y. Sup. Ct. 2008), (*citing, Medina v. California*, 505 U.S. 437 (1992); *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

Defendant argues GPD's failure to provide him an interpreter violated his due process rights, including his rights to privacy, property, and liberty. Def.'s Mot. to Dismiss at 5. An interpreter, he argues, would have prevented him from making the statements that led to his indictment. *See id.* However, Defendant's case differs from *People v. Garcia-Cepero*. The facts before in *Garcia-Cepero* are as follows: Police officers pulled over the defendant on suspicion of drunk driving. *Garcia-Cepero* 874 N.Y.S.2d at 691. Police officers initially attempted to pull the defendant over via verbal commands on a bull horn, but the defendant did not comply. *Id.* When the defendant finally pulled over, he mumbled in Spanish to officers in

Spanish. *Id.* at 691–692. Throughout his interactions with the police officers, the defendant gave short phrases in Spanish. *Id.* In contrast, Officer Valenzuela testified that Defendant positively responded to all of his commands, beginning with their first interaction at Defendant's residence. Digital Recording at 11:13:33–11:56:46. Officer Valenzuela never heard Defendant speak in any language other than English, nor did the Defendant use any words that Officer Valenzuela did not understand. *Id.* Defendant explained his reasons for allegedly stabbing his cousin to Officer Valenzuela in English. *Id.* Officer Valenzuela gave Defendant a *Miranda* form in English and told him to read it and let him know if he had any questions about it. *Id.* Defendant did not ask Officer Valenzuela any questions about the form, nor did he tell Officer Valenzuela that he did not understand it. *Id.*

Accordingly, although official actions affected Defendant's private interest—indictment for jailable offenses—GPD did not deprive him of procedural safeguards. The Court finds that Defendant's interactions with Officer Valenzuela at no point signaled to Officer Valenzuela that Defendant did not understand the *Miranda* form and needed an interpreter. Similarly, Officer Valenzulea testified that he believed Defendant understood the interrogation and arrest processes. Thus, GPD did not violate Defendant's due process rights.

## II. GPD officers seized Defendant within the meaning of the Fourth Amendment when they detained Defendant; however, probable cause supports such seizure.

Section 1421b(c) of the Organic Act of Guam makes the Fourth Amendment protections against unreasonable searches and seizures applicable to Guam. *People v. Tuncap*, 2014 Guam 1 ¶ 14 (internal citations omitted). "The central inquiry in Fourth Amendment cases is the 'reasonableness in all circumstances of the particular government invasion of a citizen's personal security.'" *Id.* An arrest made "without a warrant is per se unreasonable unless it falls within the specifically established and well delineated exceptions." *Id.* "Perhaps

the most common exception to the warrant requirement is an arrest made with probable cause." *Id.* Such an exception is applicable here.

Defendant asserts GPD seized him within the meaning of the Fourth Amendment when GPD detained Defendant at his home and transported him to the police precinct. Def.'s Mot. to Dismiss at 7. Officer Valenzuela testified that when he arrived at the residence, he detained Defendant and at the point he was not free to leave. Digital Recording at 11:26:58–11:56:46. Therefore, Defendant is correct; Officer Valenzuela seized Defendant within the meaning of the Fourth Amendment once he detained Defendant. Defendant also contends that his arrest without a warrant is an unreasonable seizure. Def.'s Mot. to Dismiss at 8. The Court takes judicial notice of the fact that GPD did not have a warrant to arrest Defendant. However, GPD did not need a warrant to arrest Defendant because the officers had probable cause to make the arrest.

Whether the arrest of a defendant without a warrant is constitutionally valid depends upon "whether, at moment the arrest was made, officers had probable cause to make it— whether at that moment facts within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that defendant had committed. . .an offense." *Beck v. State of Ohio*, 379 U.S. 89, 85 S. Ct 223, 13 L. Ed. 142 (1964); *see also People v. Cundiff*, 2006 Guam 12 ¶ 16.

Officers Valenzuela, Cruz, Pangelinan, and Santos responded to a reported stabbing at Defendant's family residence. Digital Recording at 11:12:41–11:13:16. Officer Valenzuela testified that when he arrived at Defendant's residence, a man stepped out of another residence, pointed at Defendant, and told Officer Valenzuela "that man" had stabbed him. Digital Recording at 11:26:58–11:56:46. Upon hearing this statement, Officer Valenzuela approached Defendant and asked him to keep his hands visible. *Id.* Defendant complied. *Id*

The Court finds that a positive identification of Defendant by the victim, coupled with the reported stabbing that initially brought the officers to the scene, is sufficient to support probable cause to seize Defendant without a warrant. The witness and victim both observed Defendant stab the victim. The Court is satisfied that these observations are reasonably trustworthy information creating probable cause to seize Defendant. Accordingly, Defendant's seizure was not illegal, and all observations and testimony from law enforcement officers involved in the case, any statements given by Defendant, and any evidence seized from Defendant should not be suppressed.

### III. GPD officers properly obtained Defendant's *Miranda* waiver.

"Persons must be advised of their rights prior to custodial interrogation. *People v. Farata*, 2007 Guam 8 ¶ 20. "Generally, statements elicited by law enforcement officials while a defendant is in custody must be preceded by *Miranda* warnings or they are inadmissible." *Id*; *People v. Sangalang*, 2001 Guam 18 ¶ 12. Whether a valid waiver of *Miranda* rights has occurred depends on the totality of the circumstances, including the background, experience, and conduct of the defendant. *Id.* ¶ 13. "There is a presumption against a finding of waiver, and the prosecution bears the burden of proving by a preponderance of the evidence that a defendant knowingly and intelligently waived his *Miranda* rights." *Id.*

The People do not dispute that Defendant was subject to custodial interrogation when Officer Valenzuela interviewed him. Digital Recording at 12:02:20–12:20:16. Therefore, the issue is whether Defendant made a knowing, intelligent, and voluntary waiver of his *Miranda* rights. Officer Valenzuela testified that he gave Defendant GPD's *Miranda* form and told him to read it. Digital Recording at 11:13:33–11:56:46. Officer Valenzuela instructed Defendant that if he understood the form, to sign it and to initial each line. *Id.* Officer Valenzuela did not tell him that he had to sign the form. *Id.* Officer Valenzuela told Defendant to let him know if

he had any questions regarding the form, and Defendant responded he did not have any questions. *Id.* Defendant filled out the form consistent with Officer's Valenzuela's instructions. *Id.* Defendant argues that because he did not write "yes" next to the question "do you understand?" on the form, that he did not actually understand the contents of the form. *Id.* Defendant argues that he initialed next to each line on the form because Officer Valenzuela told him to do so, not because he understood the contents of the form. *Id.* However, Defendant knew to inform Officer Valenzuela if he had trouble reading the form or confusion about its contents. *Id.* At no point did he convey to Officer Valenzuela verbally or non-verbally that he did not understand or could not read the form. *Id.* Defendant also contends that his referral to his cousin as his "friend" during the interrogation demonstrates his limited English proficiency; a person with English proficiency would not mix-up the two words. *Id.* The People note that both words are similar, and using them interchangeably does not necessarily mean a person is not proficient in English. *Id.* The Court agrees with the People and acknowledges that a person can be both a friend and a cousin.

Following Defendant's completion of the *Miranda* form, Officer Valenzuela began questioning Defendant about the alleged crime. *Id.* During the questioning, Defendant answered questions in a narrative fashion; he did not solely give yes or no answers. *Id.* Defendant gave an explanation as to why the stabbing occurred. *Id.* Specifically, Defendant informed Officer Valenzuela that he stabbed his cousin because he threatened to punch Defendant and he was attempting to defend himself. *Id.* Defendant never spoke a language other than English during the interrogation, nor did he ever use a word that Officer Valenzuela did not understand. *Id.* Defendant notes that Officer Valenzuela did not offer Defendant an interpreter even though Officer Valenzuela saw Defendant's passport and knew that Defendant is a citizen of FSM. *Id.* There is no requirement that law enforcement provide an interpreter

simply because the defendant is not a citizen of the United States. *See* 42 U.S.C. 2000d–7, 28 C.F.R. § 42.01, et seq.; 42 C.F.R. 42 104(b)(2) (requiring agencies receiving federal funding provide an interpreter to limited English proficiency criminal defendants and omitting any discussion of citizenship).

Defendant cites *United States v. Garibay* in his motion, which states that even when a defendant may understand some English, that does not signify he understands a *Miranda* warning in English and can knowingly, intelligently, and voluntarily waive those rights. *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998). That is not the situation in this case. In *Garibay*, the agent interrogating the defendant had to rephrase questions in order for the defendant to understand them. *Id.* at 537. Officer Valenzuela did not have to rephrase questions in order for Defendant to understand them, and Defendant gave Officer Valenzuela an explanation of his reasons for committing the stabbing in narrative form. *See* Digital Recording at 11:13:33–11:56:46. Defendant signed a form indicating that he understood his *Miranda* rights and was willing to waive them. Furthermore, the defendant in *Garibay* had a "borderline retarded IQ." *Garibay*, 143 F.3d at 538. Defendant has not offered evidence that he has a low IQ, nor has he argued that his IQ would prevent him from understanding his *Miranda* rights.

The Court in *Garibay* noted that the agent read the *Miranda* rights to the defendant in English instead of providing him with a written copy of the rights. *Id.* Here, Officer Valenzuela gave Defendant a written copy of his *Miranda* rights in English. Digital Recording at 11:13:33–11:56-46. Although like the agent in *Garibay*, Officer Valenzuela did not offer to conduct the interrogation in Defendant's native language, nothing in the interrogation suggested to Officer Valenzuela that Defendant did not understand his questions. *Id*; *Garibay*, 143 F.3d at 537. In *Garibay*, the agent performing the interrogation relied on the defendant's

indications that he understood English and ignored signals that the defendant did not understand the verbal explanation of defendant's *Miranda* rights. *See generally Garibay*, 143 F.3d at 537–539. In contrast, Officer Valenzuela specifically stated Defendant should not sign the waiver if he did not understand it, and told Defendant to let him know if he had any questions. Digital Recording at 11:13:33–11:56:46. Defendant never conveyed to Officer Valenzuela that he did not understand the form. *Id.*

While the Court takes into account the presumption against finding a waiver, it finds that the People met their burden. At no point during the interrogation and following arrest did Defendant ask for clarification about any part of the process. *Id.* The entire interrogation occurred in only the English language, during which Defendant provided detailed and thorough answers, illustrating his English proficiency. Thus, after evaluating the background, experience, and conduct of Defendant, the Court determines that het made a knowing, intelligent, and voluntary waiver of his Fifth Amendment rights.

## CONCLUSION

For the above reasons, the Court **DENIES** Defendant's Motion to Dismiss for Violation of Defendant's Constitutional and Civil Rights or in the Alternative to Suppress Evidence.

SO ORDERED, this _____14_____ day of December, 2021.



HONORABLE ALBERTO E. TOLENTINO
Judge, Superior Court of Guam